IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                                                No. C-06-2696 MMC

ALEXANDER POPOV,                      **DECISION AFFIRMING ORDER OF BANKRUPTCY COURT**

    Debtor
_____/

    Before the Court is appellant Trustee E. Lynn Schoenmann's ("Trustee") appeal from the bankruptcy court's order of April 6, 2006, overruling the Trustee's objection to appellee Martin F. Triano's ("Triano") claim against the bankruptcy estate of Alexander Popov ("Popov"). Having reviewed the briefs filed by the parties, the Court rules as follows.

### BACKGROUND

**A. Proceedings in State Court**

    On October 7, 2001, professional baseball player Barry Bonds hit a record-setting home run. The ownership of the baseball was disputed between Popov and Patrick Hayashi ("Hayashi"). On October 12, 2001, Popov and Triano signed an Attorney-Client Fee Contract and Arbitration Agreement ("Fee Contract"), whereby Popov retained Triano to represent him in a civil action against Hayashi. The Fee Contract contains the following lien provision: "Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Contract. Attorney's lien

will be for any sums due and owing to Attorney at the conclusion of Attorney's services."
(Record on Appeal ("ROA") Tab 5, Ex. C at 2.)

On October 24, 2001, Triano filed a complaint on behalf of Popov against Hayashi in the Superior Court of California, County of San Francisco, asserting various causes of action and seeking recovery of the baseball. Triano represented Popov in said action until May 14, 2003, after which time Popov represented himself. On June 25, 2003, the baseball was sold at auction for $450,000; Popov's share was $225,000.[1]

After the baseball was sold, Triano filed an action to compel arbitration as to his dispute with Popov over the amount of fees due Triano, and "obtained a preliminary injunction prohibiting Popov from transferring or encumbering the proceeds of the sale until the fee dispute is resolved." See Triano v. Popov, 2005 WL 1230766, *1 (Cal. Ct. App. 2005). Additionally, the state court granted Triano's motion to compel arbitration of the parties' fee dispute.

**B. Proceedings in Bankruptcy Court**

On September 6, 2005, Popov filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, (see ROA Tab 8 at 1), thereby automatically staying the court-ordered arbitration as to the fee dispute. On December 2, 2005, Triano filed a claim against the bankruptcy estate, asserting $777,356.89 as a secured claim. (See ROA Tab 8, Ex H at 1.) Of the total amount, Triano alleged that $473,402.65 constituted attorneys' fees and costs owed in connection with Popov's action against Hayashi, and that such fees and costs were, by reason of the lien provision in the Fee Contract, secured by the proceeds of the baseball sale. (See id. at 4.)

On December 9, 2005, the Trustee filed an objection to Triano's claim, (see ROA Tab 1), and, on March 2, 2006, filed a motion for summary judgment in support of the objection, (see ROA Tab 6). In its motion, the Trustee argued that Triano's lien was

---

[1]On December 18, 2002, the state court issued a Statement of Decision, finding Popov and Hayashi each had "an equal and undivided interest in the ball," and ordered that the ball be sold, with the proceeds to be divided equally. See Popov v. Hayashi, 2002 WL 31833731, *8 (Cal. Superior 2002)

2

avoidable on the ground Triano had failed to fully disclose in writing to Popov sufficient information concerning the nature and extent of the lien, and, as such, had violated Rule 3-300 of the California State Bar Rules of Professional Conduct.[2] In his opposition to the Trustee's motion for summary judgment, Triano argued, inter alia, that the Fee Contract complied with the requirements of Rule 3-300. (See ROA Tab 4 at 11-14.)

On March 31, 2006, the Bankruptcy Court conducted a hearing, and found that Triano had complied with Rule 3-300(A). (See ROA Tab 22 at 10.) Thereafter, on April 6, 2006, the Bankruptcy Court filed an order denying the Trustee's motion for summary judgment, overruling the Trustee's objection to Triano's claim, and finding "Triano has a valid and enforceable security interest in the proceeds of [Popov's] share from the sale of the baseball." (See ROA Tab 18 at 2.)[3] On April 7, 2006, the Trustee filed a timely notice of appeal. (See ROA Tab 19.)

**LEGAL STANDARD**

A final order of a bankruptcy court is appealable to a district court, see 28 U.S.C. § 158(a)(1); a bankruptcy court's order overruling a trustee's objection to a claim is a final order, see Siegel v. Federal Home Loan Mortg. Corp., 143 F. 3d 525, 529 (9th Cir. 1998) (holding order "allowing or disallowing" claim is "in the nature of a final judgment"). In reviewing a final order of a bankruptcy court, a district court reviews the bankruptcy court's

---

[2]Rule 3-300 provides as follows:

A member shall not . . . knowingly acquire [a] . . . security . . . interest . . . adverse to a client, unless each of the following requirements has been satisfied:
(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and
(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

See Cal. Rules of Prof'l Conduct 3-300.

[3]The Bankruptcy Court, in effect, granted summary judgment sua sponte in favor of Triano on the Trustee's objection. The Trustee has not challenged such procedure.

3

factual findings for clear error and its conclusions of law de novo. See Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.), 165 F.3d 1243, 1245 (9th Cir. 1999).

## DISCUSSION

Rule 3-300 provides that an attorney may not "acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless," inter alia, "the transaction or acquisition and its terms" are "fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client." See Cal. R. Prof. Conduct 3-300. The California Supreme Court has held that a "charging lien" is "an adverse interest within the meaning of [R]ule 3-300 and thus requires the client's informed written consent." See Fletcher v. Davis, 33 Cal. 4th 61, 69 (2004). Consequently, an attorney seeking to secure payment of hourly fees and costs by obtaining a "charging lien against a client's future judgment or recovery" must comply with the requirements of Rule 3-300. See id. at 71. If the attorney has not complied with Rule 3-300, the lien agreement is unenforceable. See id. at 72.[4]

As noted, the lien provision here at issue consists of the following language:

> **LIEN.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Contract. Attorney's lien will be for any sums due and owing to Attorney at the conclusion of Attorney's services.

(See ROA Tab 5, Ex. C at 2.) The Trustee argues such language is deficient, under Rule 3-300, for three reasons: (1) Popov was not advised in the lien agreement that if the amount of the lien was later disputed, any recovery Popov obtained on his claims could be delayed pending resolution of such dispute, either by arbitration or litigation; (2) the Fee Contract does not specifically define "lien"; and (3) the lien agreement is "buried" in the Fee Contract.

As to the first argument raised by Popov, Fletcher does not address what language

---

[4]As noted, Popov and Triano entered into the Fee Contract in October 2001, and Triano provided services thereunder until May 2003. Fletcher was decided in June 2004. Because Triano does not argue the holding in Fletcher is not retroactive, the Court assumes the holding is retroactive.

4

Case: 05-32929   Doc# 61   Filed: 07/03/07   Entered: 09/06/07 08:50:41   Page 4 of 6

in a lien agreement would satisfy the full disclosure requirement of Rule 3-300, and neither of the parties has cited, nor has the Court found, any case that directly addresses the issue.[5] The plain language of the Rule, however, refers to an attorney's having to fully disclose the "transaction or acquisition and its terms." The information that the Trustee argues should have been disclosed is not a "term" of the security interest, but, rather, pertains to how the security interest might, in the future, impact the client. The concerns expressed by the Trustee, specifically, how the lien agreement might impact the client in the future, are addressed by subsection (B) of Rule 3-300, which requires that the attorney advise the client to seek the advice of independent counsel, i.e., one who is not adverse to the client with respect to creation of the charging lien, and that the attorney provide the client a reasonable opportunity to seek such advice. See Rule 3-300(B).[6]

With respect to a definition of "lien," the Fee Contract does not, as Popov observes, define such term in a glossary or otherwise. "Lien" is, however, a commonly-used term, and the Trustee cites no authority that common terms must be expressly defined as a predicate to enforceability under Rule 3-300, either as a general matter or under the circumstances presented.[7]

Finally, although the Trustee describes the lien agreement as being "buried" in the Fee Contract, the Trustee's characterization is not accurate. The words of the lien provision are included on the second page of a four-page agreement, and are set forth in

---

[5]The lien agreement at issue in Fletcher was oral, see id. at 64, and, consequently, the California Supreme Court had no occasion to consider what specific written language would comply with the full disclosure requirement set forth in Rule 3-300.

[6]The Trustee did not contend before the Bankruptcy Court, or before this Court, that Triano failed to comply with section (B) of Rule 3-300.

[7]Indeed, in an agreement Popov entered before executing the Fee Contract, by which Popov borrowed money from his parents to pay for "upcoming legal expenses," Popov included language granting his parents a "lien" in the baseball: "Security: Borrower grants Lenders a lien on Barry Bonds 73rd Home Run Baseball as security for any and all money borrowed." (See ROA Tab 12, Ex. A to Ex. H.) Similarly, in another agreement Popov entered before signing the Fee Agreement, by which Popov borrowed money from a corporation of which he was president, Popov included language granting a "lien," as follows: "Security: Borrower grants Lender a lien on any proceeds from marketing, endorsements or sale of the 73rd Home Run Baseball." (See ROA Tab 12, Ex. B to Ex. H.)

5

the same font size as the other provisions.  Moreover, it is undisputed that Popov had actual notice of the lien provision before he agreed to enter into the Fee Contract; in particular, Popov discussed the provision with Triano's associate prior to agreeing to execute the Fee Contract.  (<u>See</u> ROA Tab 12 ¶ 6.)

## CONCLUSION

For the reasons stated, the order of the Bankruptcy Court overruling the Trustee's objection to Triano's claim is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: July 3, 2007

*/s/ Maxine M. Chesney*
MAXINE M. CHESNEY
United States District Judge